CASE NO. 25-6071

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

DENNIS LOGGINS
Plaintiff-Appellant

v.

COSTCO WHOLESALE CORPORATION
Defendant-Appellee

On Appeal from the United States District Court
For Western District of Tennessee at Memphis

_____

**BRIEF OF THE APPELLANT DENNIS LOGGINS**
_____

Sheila F. Campbell
Attorney at Law
2510 Percy Machin
North Little Rock, AR  72114
(501)  374-0700
North Little Rock, AR  72114
TEL:  (501)  374-0700
FAX:  (501)  372-5375
sheila.sfclaw@gmail.com

## I.

## TABLE OF CONTENTS

TABLE OF  CONTENTS………………………………………………………………1

TABLE OF AUTHORITIES……………………………………………………….2

STATEMENT IN SUPPORT OF ORAL ARGUMENT…………………………5

STATEMENT OF JURISDICTION…………………………………………………..6

STATEMENT OF ISSUES…………………………………………………....7

STATEMENT OF THE CASE………………………………………………………..8

SUMMARY OF ARGUMENT………………………………………………………11

ARGUMENT…………………………………………………………………………..13

**I.   Whether the district court erred in granting summary judgment to the Appellee by concluding that no reasonable jury could find that the stated reason for terminating Dennis Loggins for an alleged violation of a recording policy, was pretext for retaliation after he produced evidence of allegation of race discrimination in discovery……14**

**II.   Whether the district court erred in determining that there was no factual basis from which a jury could find evidence of pretext in its disciplinary action for violation of a company policy……..20**

CONCLUSION………………………………………………………………...31

CERTIFICATE OF C0MPLIANCE…………………………………………………32

CERTIFICATE OF SERVICE……………………………………………………….33

ADDENDUM…………………………………………………………………...35

## II.
## TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)……………………………………………………………………...11,12

*Back v. Nestle USA, Inc.,* 694 F.3d 571, 575 (6th Cir.2012)…………………...11,12

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, –69, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)…………………………………………………13,14,19,20

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)……………………………………………………………………………..14

*Dixon v. Gonzales,* 481 F.3d 324, 333 (6th Cir.2007) …………………………….21

E.E.O.C. vs. *BCI Coca–Cola, 450 F.3d at 485–86(2007)*…………………………..25

*Hamilton v. Gen. Elec. Co.,* 556 F.3d 428, 436 (6th Cir. 2009)…………………………………………………………………………………21

*Hubbell v. FedEx Smartpost, Inc.*, 933 F 3d 558 (6th Cir. 2019)…………………………………………………………………………………29

*Imwalle v. Reliance Medical Products, Inc.,* 515 F.3d 531, 538 (6th Cir.2008)…..16

*Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)……………………………………………………………………..12,14,20

*Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008)……………...14

*Llampallas v. Mini–Circuits, Lab, Inc*., 163 F.3d 1236, 1249(11th Cir.1998)…21,24

*McDonnell Douglas*, 411 U.S. 792, 93 S.Ct. 1817……………………………..16

*Michael vs. Carter,* 496 F.3d at 595–96 (2007)………………………………………………………………………...19

*Mickey v. Zeidler Tool & Die* Co., 516 F. 3d 516(6th Cir. 2008)…………………..20

*New Breed Logistics*, 783 F.3d at 1066……………………………………………...12

*Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)*……………………………………………………..29

*Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018)………..12,14

**RULES**

Fed. R. Civ. P. 56(a)………………………………………………………………14

Fed.R.Civ.P. 56(c)…………………………………………………………..11,25,29

Federal Rule of Appellate Procedure 4(a)(1)(A)…………………………………,..7

**STATUTES**

28 U.S.C. § 1291…………………………………………………………………7

28 U.S.C. § 1343(a)(4)……………………………………………………………...7

42 U.S.C. §1981………………………………………………………………..6,7,8

42 U.S.A. § 2000e……………………………………………………………8,12

42 U.S.C.A. § 2000e–3(a)………………………………………………….. 21

Civil Rights Act of 1964, § 701 et seq……………………………………12,15,16,29

Civil Rights Act of 1964, § 704(a)…………………………………………………………………...21

Title VII of the Civil Rights Act of 1964……………………………6,7,15,16,18,29

**III.**

**STATEMENT OF SUPPORT OF ORAL ARGUMENT**

Appellant, Dennis Loggins filed a race discrimination lawsuit against the Appellee in 2017 and produced in discovery an audio tape recording of an African American co-worker, Angela Tuggle. In 2022, the Appellant filed another race discrimination against the Appellee for failure to promote him to a bakery supervisor or bakery manager. Costco admits that it is undisputed that Loggins's second of three lawsuits, Loggins v. Costco Wholesale Corp., No. 2:22-cv-02026-TLP-tmp (W.D. Tenn.), was still pending at the time of his termination. RE 34, Page ID## 825-826 (Defendant's Response to Plaintiff's Statement of Disputed Facts)

During the deposition of co-worker, Angela Tuggle, on March 16, 2023, in his second discrimination lawsuit, she was asked about her statements on the recording that the Plaintiff made in 2017. RE 27-2, Page ID # 7 She apparently expressed dissatisfaction to the Appellant in the recording that she had been passed over 13 times for the position of bakery manager, but she was eventually awarded that position in 2023. RE 30-2 Page ID # 24 (Deposition of Loggins, T. Page # 90, lines 15-22) Within a few weeks of the deposition of Angela Tuggle and her complaint that she was recorded without her permission, the Appellee terminated the Plaintiff.

Oral argument will materially assist the Court because this appeal presents fact-intensive pretext issues, unsettled applications of the honest-belief rule, and significant questions about the interaction between employer recording policies and protected activity under Title VII and §1981. The case turns on nuanced credibility assessments and the proper application of the Sixth Circuit's three-part pretext framework, all of which benefit from the Court's opportunity to probe counsel's positions directly.

Second, the case implicates the scope of protected activity when an employee produces evidence of discrimination during litigation. The Sixth Circuit has recognized broad protection for participation in discrimination proceedings, but the application of that doctrine to employer recording policies is not frequently addressed. Oral argument will help clarify how the Court should balance employer policy interests against the statutory protections afforded to employees who uncover or preserve evidence of discrimination.

For these reasons, oral arguments will significantly aid the decisional process, and the Court should grant it.

## IV.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because Appellant Dennis Loggins asserted federal claims of race

discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. The district court also had jurisdiction under 28 U.S.C. § 1343(a)(4), which provides jurisdiction over civil rights actions.

On October 23, 2025, the district court entered a final order granting Defendant-Appellee's Motion for Summary Judgment and dismissing all of Mr. Loggins's claims with prejudice. That order disposed of all claims as to all parties and constitutes a final, appealable judgment under 28 U.S.C. § 1291. RE 43, Page ID # 1.

Appellant timely filed a Notice of Appeal on November 18, 2025, within the 30-day period prescribed by Federal Rule of Appellate Procedure 4(a)(1)(A). This Court therefore has appellate jurisdiction under 28 U.S.C. § 1291. RE 45, Page ID # 12.

## V.

### STATEMENT OF ISSUES

I.   **Whether the district court erred in granting summary judgment to the Appellee by concluding that no reasonable jury could find that the stated reason for terminating Dennis Loggins for an alleged violation of a recording policy, was pretext for retaliation after he produced evidence of allegation of race discrimination in discovery.**

II.  **Whether the district court erred in determining that there was no factual basis from which a jury could find evidence of pretext in its disciplinary action for violation of a company policy**

**against malicious gossip and dishonesty and its selective
enforcement of its disciplinary policy.**

## VI.

## STATEMENT OF THE CASE

Appellant, Dennis Loggins, filed a Complaint for race discrimination
and retaliation against the Appellee COSTCO pursuant to 42 U.S.A. § 2000e and
42 U.S.C. §1981 RE 1, PAGE ID 1-12 as a result of receiving a counseling notice
accusing him of violating the Appellee's policy against recording co-workers in the
workplace, malicious gossip, and dishonesty. RE 1-3. PAGE ID# 16  Appellee
suspended the Appellant for three days based on the counseling notice and then
terminated his employment. The recording was made solely to preserve evidence
of potential racial discrimination by the Appellee that was first produced in
discovery in a 2017 discrimination case. Appellant produced this same video
recording again in discovery in a 2022 discrimination case against the Appellee, for
the purpose of demonstrating a broader discriminatory environment within the
company.

On February 21, 2023, the Plaintiff filed an internal grievance against the
Appellee's store manager, Stephan Mannsbart, for a "mild shoulder rub".
(Defendant's Statement of Disputed Facts) (Exh. D ¶3; Exh B at 61;18-62:9,
105:24-106:2; 133:22- -134:1), RE 27-2, Page ID# 138. Appellant during the call

to Brim alleged interaction with Mannsbart was on camera, and that the alleged interaction had occurred a week or so before the call, though he could not identify the exact date. (Ex. D ¶) (Declaration of Brim) RE 27, Page ID # 638(Defendant's Statement of Disputed Facts) RE 27-2, Page ID # 138. Loggins also claimed during the call with Brim that the alleged interaction with Mannsbart was on camera, and that the alleged interaction had occurred a week or so before the call, though he could not identify the exact date. (Exh. D ¶3; Ex. B at 105:9-15) (Defendant's Statement of Disputed Facts) RE 27-2; Page ID #138. Mannsbart, Spira, Davis, and Yoram Rubanenko (Executive Vice President and Chief Operations Officer) were not aware that Tuggle had been recorded without her consent until at least February, 2023. (Ex. A ¶ 16; Ex. C ¶ 11; Ex. I ¶ 6; Decl. of Yoram Rubanenko, Exhibit J, ¶ 3; Ex. B at 98:5–12, 100:2–17.) RE 27-2 PAGE ID # 141 It is undisputed that the recording of Angela Tuggle was produced in a discovery deposition when the Appellant was engaged in protected activity and there is no way that the decisionmakers did not know when this recording was produced. Ms. Tuggle made it abundantly clear in her grievance against the Appellant that she became aware of the recording during her deposition on March 16, 2023. (Ex. B at 92:3–12.)(Defendant's Statement of Disputed Facts) RE 27-2, PAGE ID. #14

The affidavit of Elve Maclin, a customer, stated that she witnessed Mannsbart coming out of his office a few days after Valentine in 2023 and shove

9

Appellant, Dennis Loggins, and there was a verbal altercation between them. Plaintiff, Exh. 1 (Affidavit of Elve Maclin) RE 30-1, Page ID## 719-720 The Appellee contends that Mannsbart did not make contact with Loggins at or near the time clock, while Loggins was clocking in at any prior to February, 2023, which the video of time clock confirms. (Defendant's Statement Undisputed Material Facts) RE 27-2, Page ID# 140 There is a genuine issue of material fact whether Mannsbart made contact with Appellant, even though the video did not capture the encounter.

Appellee contends on February 17, 2023, Winfred Hamilton, an African American cashier at the Southeast Memphis Warehouse, reported that Loggins had told him that he had filed charges with the local police station against Mannsbart for allegedly bumping into him. (Exh A ¶15) (Statement of Defendant's Undisputed Facts) RE 27-2, Page ID # 140 Appellant stated that Winfred Hamilton informed him that since he previously worked at the Sheriff's office that the Appellant had a right to file charges against Mannsbart. RE 30-2, Page ID#: 750 The Appellant spoke with his counsel, and she advised him not to file a police report. (Deposition of Loggins, T. 114, lines 14-15) RE 30-2, Page ID# 751 Appellant testified in his deposition that when he walked over toward Winfred Hamilton, he said to him there were two witnesses, so he could file a complaint against Mannsbart for pushing him with his shoulder. Winfred is absolutely wrong

10

about me telling him that I had filed a police report. (Deposition of Loggins, T. 112, lines 14-25) RE 30-2, Page ID # 750 Appellee's attorney inquired whether Appellant had filed a police report and was advised that no police report had been file by Appellant attorney. RE 27-11, Page ID# 10 Appellee knew that no police report had been filed before the Appellant was given a counseling notice and terminated for malicious gossip; though the Appellant filed the police report after he was terminated.  Appellee then cites the Appellant for a policy violation of being dishonest because he had not filed a police report, which he denies telling his co-worker that he had filed the police report.

## VII.

## SUMMARY OF ARGUMENT

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Back*

*v. Nestle USA, Inc.,* 694 F.3d 571, 575 (6th Cir.2012) (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505).

Under Title VII, a plaintiff must establish four elements for a prima facie claim of retaliation: (1) he engaged in a protected activity; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq. " *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018) (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)) Once a plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant "to proffer some legitimate, nonretaliatory reasons for its actions." *New Breed Logistics*, 783 F.3d at 1066 (citations omitted). If the defendant does so, the burden of persuasion then shifts back to the plaintiff "to show that the proffered reasons were not the true reasons for the employment decision, *i.e.*, that the reasons were a pretext for retaliation." *Id*

The District Court erred in granting Summary Judgment because Appellant presented sufficient evidence for a reasonable jury to find retaliation under Title VII.  Appellant engaged in protected activity when he produced a recording documenting workplace discrimination. The Appellee learned of the recording

only through the Appellant's participation in his discrimination case. Then the Appellee terminated him immediately thereafter.

Under *Laster vs. City of Kalamazoo*, 746 F. 3d 714(6th Cir. 2014) retaliation claims must be analyzed under the broader Burlington Northern standard, which asks only whether the employer's actions might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, –69, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)

Nevertheless, Costco admits that it is undisputed for purposes of resolution of the summary judgment motion only that (1) during his October 2, 2024 deposition, Loggins stated to Costco's attorney that he had produced a tape recording in 2017 and 2022; (2) Loggins's counsel had in Case 2:23-cv-02749-TLP-cgc RE, 34  Page ID# 826  provided the same in an envelope to Costco's attorney on the day of the October 2, 2024 deposition; and (3) Costco's attorney played the recording at the deposition before the recording was turned over by the Appellant at the deposition.

## VIII.

## ARGUMENT

**STANDARD OF REVIEW**

Summary judgment is appropriate only where there is "no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case. Id.

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant initially must show the absence of a genuine issue of material fact. Id. at 323, 106 S.Ct.2548. "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, the moving party may meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008) (quoting Celotex, supra, 477 U.S. at 325, 106 S.Ct. 2548).

**I.   Whether the district court erred in granting summary judgment to the Appellee by concluding that no reasonable jury could find that the stated reason for terminating Dennis Loggins for an alleged**

14

**violation of a recording policy, was pretext for retaliation after he produced evidence of allegation of race discrimination in discovery.**

To establish a prima facie case for retaliation under Title VII, an employee must show that (1) she engaged in a protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

Knowledge that an employee exercised protected right, as required to establish a prima facie case for retaliation under Title VII, may be imputed to the employer when an individual with knowledge was the actual decisionmaker and driving force behind the employment action. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

For purposes of a prima facie case for retaliation under Title VII, direct evidence of an employer's knowledge that an employee exercised a protected right is not required, and a plaintiff may survive summary judgment by producing circumstantial evidence of her employer's knowledge to establish this element of her claim. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

For purposes of a prima facie case for retaliation under Title VII, direct evidence of an employer's knowledge that an employee exercised a protected right is not required, and a plaintiff may survive summary judgment by producing

circumstantial evidence of her employer's knowledge to establish this element of her claim. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq. Title VII retaliation claim can be established "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Imwalle v. Reliance Medical Products, Inc.,* 515 F.3d 531, 538 (6th Cir.2008). Therefore, we analyze Plaintiff's retaliation claim under the burden-shifting framework of *McDonnell Douglas*, 411 U.S. 792, 93 S.Ct. 1817.

Although temporal proximity between a protected activity and an adverse employment action can be used to support a prima facie case for retaliation under Title VII, it supports the fourth prong of the analysis, causation, rather than knowledge. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq.

At the deposition of the Plaintiff on February 15, 2023, Mr. Loggins testified that in this lawsuit, you already had the tape recorder in 2017, and in 2022 because Ms. Campbell said she was going to send you the tape recorder because she gave it to you in an envelope. You just played the tape recorder of Angel Tuggle that I recorded in 2017, RE  30-2 Page ID # 744 (Plt. Exh. 2 Excerpt of Logging Depo. pg. 86- lines 4-9.) Mannsbart, Spira, Davis, and Yoram Rubanenko Executive Vice President and Chief Operations Officer) were not aware that Tuggle had been

16

recorded without her consent until at least February 2023. RE 27-2 Page ID # 141 (Ex. A ¶ 16; Ex. C ¶ 11; Ex. I ¶ 6;) Decl. of Yoram Rubanenko, Exhibit J, ¶ 3; Ex. B at 98:5–12, 100:2–17.) The only way these managers could have known about the recordings in February of 2023 was the fact that Mr. Loggins had filed a discrimination lawsuit and he had turned over the tape recording in the discovery in a second lawsuit filed against Appellee for race discrimination and retaliation for failing to promote him to either bakery manager or bakery supervisor in 2022.

On March 16, 2023, Appellee's counsel deposed Angela Tuggle and informed her Loggins had recorded her. (Defendant's Statement of Undisputed Fact. (Ex. B at 92:3-12) RE, 27-2, Page # ID 141 On March 17, 2023, Tuggle submitted a written complaint which Spira and Wendy Davis (Senior Vice President) became aware of, in which Tuggle (1)  without permission violated the Employee Agreement and was a ground for termination and  that Loggins had recorded a conversation of her without knowledge, which she found upsetting (2) stated that Loggins recoding her without her permission in violation of the Employee Agreement and was a ground for termination and (3) asked for Loggins to be terminated as a result. (Ex. C Decl. ¶¶11-12 & Ex 2 Decl. of Wendy Davis, Exhibit 1,5,6) (Defendant's Statement of Undisputed Facts ¶48) RE 27-2  Page ID # 141 Mannsbart, Spira, David, and Yoram Rubanenko (Executive Vice President and Chief Operation Officer) were not aware that Tuggle had been recorded

without her consent until at least February 2023. (Defendant's Statement of Undisputed Facts ¶49)RE 27-2, Page ID #: 141. It is undisputed that the decisionmakers were aware that this tape recording was produced during a discovery deposition where the Appellee was being sued for race discrimination and retaliation. Ms. Tuggle stated to Appellant in a tape recording that she had applied for the position of bakery manager 13 times and they kept overlooking her and giving the position to others and she was overqualified than the individuals that got the position. RE 30-2 Page ID # 24. Undoubtedly, Ms. Tuggle would have been upset about finding out about the recording because she had just been awarded the position of bakery manager and she would not want management to know that she had the same feelings about being discriminated against in the past.

Title VII's participation clause protects employees who participate in any manner in a Title VII investigation and proceeding. This protection is expansive and does not depend on the employer's view of the employee's conduct. The Sixth Circuit has consistently held that participation clause protection is broad and robust. Even if the Appellee argues that the recording violated policy, the Sixth Circuit recognizes that conduct undertaken while opposing discrimination remains protected unless it is so egregious that it loses statutory protection, but that threshold is not met here. The decisionmakers learned of the recording only because the Appellant produced it in his second employment discrimination case

18

that was still ongoing at time of his termination. This satisfies the knowledge requirements.

Under the former, Plaintiff need only show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. vs. White,* 548 U.S. at 57, 126 S.Ct. 2405 (internal quotation marks and citations omitted). The Supreme Court made clear in *Burlington Northern* that the requirements for a retaliation claim are in fact considerably less stringent. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, –69, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)

Plaintiff's burden of establishing a materially adverse employment action is "less onerous in the retaliation context than in the anti-discrimination context." *Michael vs. Carter,* 496 F.3d at 595–96 (2007) (citing *Burlington N.,* 548 U.S. at 67–71, 126 S.Ct. 2405). Unlike a Title VII discrimination claim, "the antiretaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace." *Burlington N.,* 548 U.S. at 57, 126 S.Ct. 2405. To establish the third element of the *prima facie* Title VII retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well

might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68, 126 S.Ct. 2405 Appellee took the ultimate adverse action of terminating the Appellant from his position as an assistant cashier. Appellant did not produce the video recording in a deposition to be terminated from his employment when he believed that he was protected from such action by Title VII.

The Sixth Circuit recognizes that temporal proximity, when combined with other evidence can establish causation and defeats summary judgment. *Laster vs. City of Kalamazoo*, 746 F. 3d 714(6th Cir. 2014); *Mickey v. Zeidler Tool & Die* Co., 516 F. 3d 516(6th Cir. 2008)( holding that close temporal proximity alone can be enough to establish a causal connection for a prima facie case)  Appellant was terminated immediately after he produced the recording in a deposition of a witness in an employment discrimination case. Appellee discovered the recording through the protected activity and the policy was enforced only after Plaintiff engaged in protected activity. This is classic evidence of retaliation.

II.    **Whether the district court erred in determining that there was no factual basis from which a jury could find evidence of pretext in it disciplinary action for violation of a company policy against malicious gossip and dishonesty and its selective enforcement of its disciplinary policy.**

Title VII plaintiff bears initial burden to establish prima facie case of retaliation, if plaintiff succeeds in making out elements of prima facie case then burden of production of evidence shifts to employer to articulate some legitimate,

20

non-discriminatory reason for its actions, and if employer satisfies its burden of production then burden shifts back to plaintiff to demonstrate that defendants' proffered reason was not true reason for employment decision; although burden of production shifts between parties, plaintiff bears burden of persuasion through process. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e–3(a). Under *McDonnell Douglas,* Plaintiff bears the initial burden to establish a *prima facie* case of retaliation. If Plaintiff succeeds in making out the elements of a *prima facie* case, "the burden of production of evidence shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions. If the defendant satisfies its burden of production, the burden shifts back" to Plaintiff to demonstrate that Defendants' proffered reason was not the true reason for the employment decision. *Dixon v. Gonzales,* 481 F.3d 324, 333 (6th Cir.2007) (quotation marks and citations omitted). "Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion through the process." *Id.*

We have held that when an employer ... waits for a legal, legitimate reason to fortuitously materialize, and then uses it to cover up his true, longstanding motivations for firing the employee, the employer's actions constitute the very definition of pretext."). *Hamilton v. Gen. Elec. Co.,* 556 F.3d 428, 436 (6th Cir. 2009) Appellee's decisionmakers, Mannsbart, Spira, David, and Yoram Rubanenko

21

(Executive Vice President and Chief Operation Officer) were not aware that Tuggle had been recorded without her consent until at least February 2023. (Defendant's Statement of Undisputed Facts ¶49) RE 27-2, PAGE ID# 141 In February of 2023, the Appellant contends that there was an altercation between himself and his manager, Mannsbart where he shoved him with his shoulder. Appellee contends that Appellant spread malicious gossip to one person who told management that Appellant had filed a police report on the incident. However, Appellee attorney immediately contacted Appellant's attorney who advised her that the Appellant had not filed a police report. RE 27-11, Page ID# 10 The Appellee knew Appellant had not filed the police report. Appellant testified that at the request of his attorney he did not file the police report. RE 30-2 Page ID# 751 (Deposition of Loggins, T. 114, lines 20-24) Loggins subsequently filed the police report on March 27, 2023, RE 30-2, Page ID# 751 (Deposition of Loggins, T. 123, lines 5-7) There was no massive widespread malicious gossip other than if the management of COSTCO spread the confidential statement that was related to them by another employee which was incorrect about Mr. Loggins filing a police report before he was terminated. Then the Appellant was accused of being dishonest because he did not file the police report at the request of his attorney. Appellee vehemently claims that there was no physical touching between the Appellant and the store manager, Mansbart, because it was not captured on video. Yet the Appellant reported to the

human resource specialist that Mannsbart had shoved him with his shoulder. Moreover, there was a customer that provided an Affidavit that she was familiar with Mannsbart because she previously worked at the store as a demonstrator of product for another company and she was also familiar with Dennis Loggins… This customer gave an affidavit that a few days after Valentine in 2023, she was in the store on Hackscross Rd. in Memphis, Tennessee and she witnessed Mr. Loggins standing at the time clock where Stefan Mannsbart came up to Mr. Loggins and bumped him with his shoulder. The Affiant stated that Appellant said to Mannsbart, "why did you bump me, because there was enough room for you to go around me." RE 30-1, Page ID# 719 (Affidavit of Elve Maclin)

Mannsbart touched me when he shouldn't have, and that all came from that he was upset about this here lawsuit being filed. Plt. Exh 2 Depo of Loggins, pg. 125, lines 12-21. Appellant is referring to his second lawsuit for discrimination that was in progress in February of 2023. Danetta Brim, the human resources specialist to whom Plaintiff reported Mannsbart conduct of touching him, included a statement in her email on February 22, 2023, that Dennis said, Mannsbart, GM, said in October of 2022, "you are not going to have a job much longer if you keep throwing out allegations that are not going to stick." RE  30-2, Page ID 772 (Plt. Exh. #3) It also shows that Mannsbart knew about the Appellant's second discrimination lawsuits because it involved Mannsbart not recommending him for

23

a promotion to bakery manager or bakery supervisor. Mannsbart was threatening the Appellant's job and a reasonable jury could infer that he had some influence over whether the Appellant was ultimately terminated.

A reasonable fact finder could find that a number of the actions Appellant testified about would be sufficient, on their own or in combination, to dissuade a reasonable worker from filing or pursuing an EEOC complaint.

This statement could raise an issue of fact whether Mannsbart was attempting to intimidate the Appellant to keep him from protesting discriminatory treatment. The Appellant never reported to anyone in management that he had filed a police report. In fact, the Appellant's attorney informed management that he had not filed a police report and that was well known before his termination.

Under "cat's paw" theory, the subordinate, Mannsbart, not the nominal decisionmaker, is the driving force behind the employment action. When a decisionmaker acts in accordance with a retaliator "without [him]self evaluating the employee's situation," the retaliator "clearly causes the tangible employment action, regardless of which individual actually" enforces the adverse transfer or termination. *Llampallas v. Mini–Circuits, Lab, Inc.*, 163 F.3d 1236, 1249(11th Cir.1998) (citations omitted). "In effect, the [retaliator] is the decisionmaker, and the titular 'decisionmaker' is a mere conduit for the [retaliator's] discriminatory animus." Id. (emphasis in original). Imposing liability on the employer in this

24

context is in accord with the agency principles and policies underlying Title VII.  E.E.O.C. vs. *BCI Coca–Cola, 450 F.3d at 485–86(2007)*

The Affidavit of an eyewitness puts into play the question of whether the statement that Mr. Loggins made was true about being bumped into his shoulder by Mannsbart which would refute the violation of the policy of malicious gossip and being in violation of the policy of honesty.  There is definite an issue of credibility that must be resolved by the trier of fact and the District Court has robbed the province of the jury by making a credibility determination. A genuine dispute of fact exists, as would preclude summary judgment, where there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Fed. R. Civ. P. 56(c).

Appellee has an Employment Agreement which set forth its disciplinary policy that list offenses for which an employee can be terminated. Dishonesty is one of the offenses for which an employee can be immediately terminated, but it selectively enforces its policy. In 2023, Jacqueline Davis, a Caucasian female, Merchandising Manager, who worked at the same location as the Appellant under Mannsbart, was accused of Falsification of Company records or time records, omitting facts by which gave misleading information. RE 27-2, Page ID # 143 Ms. Davis received a Counseling Notice for Falsification of Company records. RE 27-4, Page ID # 169

Worse yet, she then walked out of the meeting meant to resolve the infraction before the meeting ended, she was demoted to a cashier. Ms. Davis was insubordinate and made up her mind that she did not have to even listen to management. She did not lose her job for being dishonest and causing the Appellee to potentially lose money.

Jacqueline Davis, a Caucasian female certainly falsified records which is dishonest. The Plaintiff is being accused of being dishonest when he allegedly told Winfrey Hamilton that he had filed a police report. Plaintiff denies that he ever told Mr. Hamilton that he had filed a police report. However, if management believed that he had lied about filing a police report, then he should have been treated like Ms. Davis and not terminated from his position but given a lesser penalty of the three day suspension that he was originally placed on by Mannsbart. However, management knew that Mr. Loggins had not filed a police report, and management knew that Mr. Loggins had only spoken with one person about filing a police report and not spread malicious gossip, so its motive is questionable and not worthy of credence. These are facts from which a fact finder would have to judge the credibility of the witnesses and is not subject to summary judgment.

Another co-worker, Luterio Ramirez, who reported to Mannsbart, threatened to "pop a cap" in the Plaintiff, RE 30-2, Page ID. # 763 (Plt. Exh. 2 Depo of Loggins, pg. 161, lines 10-14) Luterio Ramirez made the threat, and he went from

26

part-time in the bakery to a full-time cashier, and he said Stefan Mannsbart put him up to it. RE 30-2, Page ID # 763 (Plt. Exh. 2 Depo of Loggins, pg. 164, lines 18-20) Jason Newman, the Bakery Manager, testified that Ramirez threatened to pull a gun on Mr. Loggins, but he was transferred instead of being terminated. RE 30-4, Page ID # 781 (Plt. Exh 4, Excerpt of Depo of Jason Newman, pg. 41, lines 9-16.) Harsley Wilkins heard Ramirez say that he was going to his vehicle to get his assault rifle. RE 30-2, Page Id # 162 (Plt. Exh. 2 Depo of Loggins, pg. 162, lines 7-14) Possession of a firearm, or weapon on company premises is an offense for which Luterio Ramirez should have been terminated according to the Employee Agreement. RE  27-5 Page ID # 418 (Def. Exh B, pg. 248) Ramirez had been issued an ECN, demoted, and moved to a different department for threatening Loggins. RE 27-4 Page ID #167 Management made a false statement that Luterio Ramirez was demoted for his action. This creates a genuine issue of fact whether Appellee motive was unworthy of belief. Threatening to kill another employee which is a felony which requires immediate termination verses terminating the Appellant for saying that he was shoved by management and did not file a police report which is at best a misdemeanor under criminal law shows the dichotomy of how the Appellant was held to a higher standard in his conduct during his employment than the person who threatened to take his life. These are facts from which a reasonable jury could conclude that the motive of Appellee's management

for terminating the Appellant was not worthy of credence and is more likely than not for retaliation in filing his second employment discrimination lawsuit. Appellee knew about the video recording in February 2023, it knew about the fact that the Appellant did not file the police report in 2023, but it took no adverse action until March, 2023, after the deposition Angela Tuggle, when another employee found out she was recorded and that recording had been placed into evidence in an employment discrimination lawsuit in 2017 and 2022. If the safety of the employees of COSTCO was paramount, then Ramirez would have been immediately terminated because there was no doubt he committed the offense of Terroristic Threatening, a felony against the Appellant. (Counseling Statement of Ramirez) RE 27-4, PAGE ID # 169

The offenses of violating the company policy against malicious gossip and violating the dishonesty policy is selectively enforced and was used against the Appellant to terminate him in close proximity to the Appellant actively participating in discovery in an employment discrimination lawsuit against the Appellee which is protected activity under Title VII.

The violation of the policy against malicious gossip was some petty offense since the jury could find that Mr. Loggins had not filed the police report when he was terminated and the Appellee had known for a month before he was terminated that he had not filed the police report and that only employee whom the Appellant

28

discussed the matter with had previously worked for the Sheriff's department and he was giving the Appellant advise about filing a police report. Affiant Elve Maclin cast doubt on the credibility of Winfred Hamilton by stating that he has a reputation in the community for exaggeration, lying and being untruthful. RE 30-1, Page ID##  719-720 ( Affidavit of Maclin) Appellant also made an internal report to Human Resources showing that he was serious about the GM Mannsbart not putting his hand on him. Similarly, we have upheld a finding of retaliation where the record showed that "the plaintiff's activities were scrutinized more carefully than those of comparably situated employees. *Hubbell v. FedEx Smartpost, Inc.*, 933 F 3d 558 (6th Cir. 2019)

At the summary judgment stage, a plaintiff alleging retaliation under Title VII meets burden of demonstrating that defendant's proffered non-retaliatory reason for adverse employment action was actually pretext to hide unlawful retaliation when he produces sufficient evidence that a reasonable finder of fact could reject the employer's proffered reason. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed. R. Civ. P. 56(c).

In *Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000),* the Supreme Court explained the standard that a court must apply when it is reviewing a motion for judgment as a matter of law or a motion for summary judgment. In doing so, however, the court must

draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."

Elve Macklin prepared an Affidavit under oath that she was in COSTCO on -Hackscross Rd in Memphis, Tennessee, a few days after Valentine in 2023, when she witnessed Mr. Loggins standing at the time clock when Stefan Mannsbart came up to Mr. Loggins and bumped him with his shoulder. Appellant and Mannsbart had a verbal altercation about him shoving Mr. Loggins. Since Ms. Macklin observed the interaction between the Appellant and Mannsbart, and she stated in her opinion that the shoving was intentional then the Corut cannot just disregard her Affidavit.

The District Court erred in disregarding this Affidavit as evidence

30

because it would have contradict the video recording of the Appellee. The Court determines that the video that it saw contained every encounter between Appellant and Mannsbart but there is an eyewitness that contradicts the District Court's judge's belief. At the summary judgment stage, the District Court is not the determiner of credibility, and the Affidavit should have raised a genuine issue of material fact whether there was retaliation against the Appellant for engaging in protected activity and whether the motive for terminating the Appellant was worthy of credence.

**IX.**

**<u>CONCLUSION</u>**

**WHEREFORE**, Appellant Dennis Loggins prays that the Order Granting COSTCO'S (Appellee) Motion for Summary Judgment be reversed, and the case remanded back to District Court for trial and that the Court set this matter for oral argument.

Respectfully submitted,

/s/Sheila F. Campbell
Sheila F. Campbell
TCBN: 40026
2510 Percy Machin Dr.
North Little Rock, AR  72114
(501) 374-0700 (telephone)
(501) 372-5375(facsimile)
 sheila.sfclaw@gmail.com

31

## X.

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Sheila F. Campbell, hereby certify that this brief complies with the type-volume limitation of Fed. R .App. 32(a)(7)(B) in that this brief contains 6959 words and 770 lines of text and it complies with Fed R. App. 32(a)(5) as it has been prepared in proportionally spaced typeface using Microsoft Office 2013 in the font size 14 points and the type style of Time Romans.


<u>/s/Sheila F. Campbell</u>
Sheila F. Campbell

## XI.

## CERTIFICATE OF SERVICE

I, Sheila F. Campbell, hereby certify that I have served a copy of the foregoing Appellant's Brief through the ELECTRONIC FILING SYSTEM OF THE COURT on this 2nd day of February, 2026:

Andrew Michael McKinley
SEYFARTH SHAW, LLP
1075 Peachtree St., NE
Suite 2500
Atlanta, GA  30309
amckinley@seyfarth.com

Dawn R Soloway
SEYFARTH SHAW, LLP
Two Seaport Lane, Suite 1200
Boston, MA  02210
dsoloway@seyfarth.com

Bailey Green
SEYFARTH SHAW, LLP
1075 Peachtree Street, N.W.
Suite 2500
Atlanta, GA  30309
bgreen@seyfarth.com

Geoffrey A. Lindley
RAINEY KIZER REVIERE & BELL
P. O. Box 1147
209 E. Main Street
Jackson, TN  38302-1147

John T. Murray
SEYFARTH SHAW LLP
620 Eighth Avenue
Ste 33rd Floor
New York, NY 10018-1405
jmurray@seyfarth.com

# XII.

# ADDENDUM

COMPLAINT……………………………………………RE 1 Page Id # 1-12

ANSWER FOR DEFENDANT …………………………..RE 9, Page Id# 29-49

MOTION FOR SUMMARY JUDGMENT BY
COSTCO WHOLESALE CORPORATION……………..RE 27, Page Id# 113-115

DEFENDANT'S STATEMENT OF UNDISPUTED
FACTS……………………………………………RE 27-1, Page Id # 116-134

RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT……………………………….RE 30, Page Id # 716-718

PLAINTIFF'S STATEMENT OF DISPUTED
FACTS……………………………………………..RE 32, Page Id #: 811-814

RESPONSE TO PLAINTIFF' STATEMENT OF
DISPUTED FACTS…………………………………..RE 34, Page Id #  824-834

ORDER GRANTING COSTCO'S MOTION FOR
SUMMARY JUDGMENT……………………………...RE 42, Page Id #   864-886

JUDGMENT…………………………………………..RE 43, Page Id # 887

NOTICE OF APPEAL……………………………..,,,,,RE 45, Page Id # 901-902