# United States Court of Appeals

*for the*

# Sixth Circuit

Case No. 25-6071

DENNIS LOGGINS,

*Plaintiff-Appellant,*

– v. –

COSTCO WHOLESALE CORPORATION,

*Defendant-Appellee.*

ON APPEAL FROM AN ORDER ENTERED IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT OF TENNESSEE AT MEMPHIS
IN CASE NO. 2:23-CV-02749,
THE HON. THOMAS L. PARKER, JUDGE PRESIDING

## BRIEF OF DEFENDANT-APPELLEE

ANDREW M. MCKINLEY
BAILEY G. GREEN
SEYFARTH SHAW LLP
1075 Peachtree Street, North East,
　Suite 2500
Atlanta, Georgia 30309
(404) 885-1500

DAWN REDDY SOLOWEY
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 1200
Boston, Massachusetts 02210
(617) 946-4800

*Counsel for Defendant-Appellee*

CP COUNSEL PRESS    (800) 4-APPEAL • (625042)

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST</u>

Pursuant to Sixth Circuit Rule 26.1, Appellee makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

   No.

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST ................................................................................... i

TABLE OF AUTHORITIES ...................................................................... iv

STATEMENT REGARDING ORAL ARGUMENT ................................. vi

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..............1

STATEMENT OF THE CASE......................................................................1

    I.     NATURE OF THE CASE AND PROCEDURAL BACKGROUND...................................................................1

    II.    STATEMENT OF THE FACTS .............................................2

SUMMARY OF THE ARGUMENT ........................................................10

ARGUMENT .............................................................................................11

    I.     STANDARD OF REVIEW ..................................................11

    II.    LOGGINS ABANDONED ALL CLAIMS OTHER THAN HIS RETALIATORY TERMINATION CLAIM RELATED TO THE RECORDING OF TUGGLE. .........................................12

    III.   THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON LOGGINS'S RETALIATION CLAIM. ....................................................13

        A.    Loggins Did Not Challenge the District Court's Determination that He Had Not Carried His Burden of Establishing But-For Causation. ...............................14

        B.    Loggins Failed to Create a Genuine Issue of Material Fact as to Pretext for His Retaliation Claim. ............16

            1.    Loggins Failed to Establish that Terminating Him for Malicious Gossip or Dishonesty Was a Mere Pretext for Retaliation........................................16

a.  Loggins's Dishonesty and Malicious Gossip About Mannsbart Making Contact with Him. ...................................................18

b.  Loggins's Malicious Gossip About a Police Report and Mannsbart. ..........................................24

2.  Loggins Failed to Establish that Terminating Him for Recording a Co-Worker Without Consent Was a Mere Pretext for Retaliation. .......................................27

CONCLUSION ...............................................................................30

CERTIFICATE OF COMPLIANCE...................................................31

CERTIFICATE OF SERVICE ..........................................................32

DESIGNATION OF RELEVANT COURT DOCUMENTS ...................................33

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby*,
477 U.S. 242 (1986)................................................................................12

*Benge v. Johnson*,
474 F.3d 236 (6th Cir. 2007) ................................................................15

*Booker v. Brown & Williamson Tobacco Co.*,
879 F.2d 1304 (6th Cir. 1989) .......................................................28, 29

*Breier v. ITT Automotive, Inc.*,
98 F. App'x 458 (6th Cir. 2004)...........................................................15

*Burks v. Yellow Transp. Inc.*,
58 F. App'x 867 (6th Cir. 2008).............................................................17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................................12

*Chen v. Dow Chemical Co.*,
580 F.3d 394 (6th Cir. 2009) ................................................................20

*Dixon v. Gonzales*,
481 F.3d 324 (6th Cir. 2007) ..........................................................16, 17

*Ercegovich v. Goodyear Tire & Rubber Co.*,
154 F.3d 344 (6th Cir. 1998) ................................................................22

*Galey v. May Dep't Stores Co.*,
9 F. App'x 295 (6th Cir. 2001) .............................................................12

*Geiger v. Tower Auto.*,
579 F.3d 614 (6th Cir. 2009) ................................................................21

*Goodsite v. Norfolk S. Ry. Co.*,
573 F. App'x 572 (6th Cir. 2014)..........................................................15

*Jones v. St. Jude Med. S.C., Inc.*,
504 F. App'x 473 (6th Cir. 2012)...................................................*passim*

*Kocsis v. Multi-Care Mgmt., Inc.*,
  97 F.3d 876 (6th Cir. 1996) .................................................................................12

*Majewski v. Automatic Data Processing, Inc.*,
  274 F.3d 1106 (6th Cir. 2001) ............................................................................19

*Mitchell v. Toledo Hosp.*,
  964 F.2d 577 (6th Cir. 1992) .........................................................................22, 24

*Roberts v. Principi*,
  283 F. App'x 325 (6th Cir. 2008) .......................................................................21

*Russell v. Univ. of Toledo*,
  537 F.3d 596 (6th Cir. 2008) ..............................................................................17

*Ruth v. Children's Med. Ctr.*,
  No. 90-4069, 1991 WL 151158 (6th Cir. Aug. 8, 1991).............................23, 24

*Scott v. Harris*,
  550 U.S. 372 (2007)......................................................................................12, 18

*Shreve v. Franklin County*,
  743 F.3d 126 (6th Cir. 2014) ..............................................................................18

*Smith v. Leggett Wire Co.*,
  220 F.3d 752 (6th Cir. 2000) ..............................................................................22

*United States v. Premises Known as 526 Liscum Drive*,
  866 F.2d 213 (6th Cir. 1989) .................................................................19, 25, 26

*Wright v. Murray Guard, Inc.*,
  455 F.3d 702 (6th Cir. 2006) ..............................................................................11

**Statutes**

42 U.S.C. § 2000e-3(a) .............................................................................................28

**Other Authorities**

Fed. R. Civ. P. 56(a).................................................................................................11

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is not necessary because the dispositive issues have been authoritatively decided, the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Did Loggins challenge the district court's conclusion that he did not present evidence creating a genuine issue of material fact as to whether he would not have been terminated but-for retaliatory animus, and if so, did the district court correctly reach that conclusion?

2.      Did the district court correctly determine that Loggins failed to create a genuine issue of fact as to whether each of the three bases for Loggins's termination were a mere pretext for retaliatory animus?[1]

## STATEMENT OF THE CASE

## I.    NATURE OF THE CASE AND PROCEDURAL BACKGROUND

Appellant Dennis Loggins was terminated from Costco for his violations of Appellee Costco Wholesale Corporation's policies prohibiting dishonesty, malicious gossip, and recording a co-worker without her permission. He thereafter filed the instant lawsuit, alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, in connection with his receipt of a disciplinary action, a three-day suspension, his termination, and an alleged denial of training as a forklift driver. (Compl., R. 1, at PageID 1–12.)

The district court granted summary judgment to Costco on all claims. (MSJ Order, R. 42, at PageID 864–86.) With respect to the retaliatory termination claim

---

[1] Loggins cites two issues in his appellate brief, both of which are encompassed by the second issue noted above.

at issue in this appeal, the district court entered summary judgment because Loggins had not (1) carried his burden of showing that retaliatory animus was a but-for cause of his termination; and (2) shown that each of Costco's three bases for his termination were a mere pretext for retaliation. (*Id.* at PageID 880–86.) Loggins then filed a notice of appeal. (Notice of Appeal, R. 45, at PageID 901.)

## II.   STATEMENT OF THE FACTS[2]

Loggins worked for Costco for approximately nine years, beginning in December 2014. (MSJ SOF, R. 27-2, at PageID 135, 142 ¶¶ 1, 54; Mannsbart Decl., R. 27-4, at PageID 151 ¶ 2.) On February 21, 2023, he called Dannetta Brim to lodge a complaint that Stefan Mannsbart, the General Manager of the location at which he worked, had made contact with him via a "mild shoulder rub"[3] about one week prior, while Loggins was clocking in in the morning. (MSJ SOF, R. 27-2, at PageID 135, 138 ¶¶ 2, 26–27; Mannsbart Decl., R. 27-4, at PageID 151 ¶ 3; Pl.'s Dep., R. 27-5, at PageID 175, 189–90, 214–15, 220–21; Brim Decl., R. 27-7, at Page ID 638 ¶ 3.) During that call, Loggins also claimed that the interaction with Mannsbart was on camera. (MSJ SOF, R. 27-2, at PageID 138 ¶ 28; Pl.'s Dep., R. 27-5, at PageID 214; Brim Decl., R. 27-7, at Page ID 638 ¶ 3.) Loggins

---

[2] As the district court held, Loggins did not create a genuine dispute as to the facts outlined in Costco's motion warranting summary judgment. (MSJ Order, R. 42, at PageID 864–70 & n.1.) Thus, Costco's citations are largely to its undisputed Statement of Facts below. (MSJ SOF, R. 27-2, Page ID 135–46.)

[3] As reflected below, Loggins's description of this supposed contact—which undisputed video shows did not occur—has changed over time.

2

subsequently admitted during his deposition that he may have made inaccurate statements during his call with Brim. (MSJ SOF, R. 27-2, at PageID 139 ¶ 31; Pl.'s Dep., R. 27-5, at PageID 233–34.)

Brim relayed Loggins's complaint to Justin Spira, a Vice President and Regional Operations Manager for Costco, on February 22, 2023. (MSJ SOF, R. 27-2, at PageID 139 ¶ 30; Spira Decl., R. 27-6, at PageID 484–85 ¶ 4; Brim Decl., R. 27-7, at PageID 638 ¶ 3.) Spira subsequently called Loggins to discuss his complaint, and Loggins reported to Spira that his alleged interaction with Mannsbart occurred near the time he called Brim. (MSJ SOF, R. 27-2, at PageID 139 ¶ 32; Spira Decl., R. 27-6, at PageID 485 ¶ 6.) After his call with Loggins, Spira had Sean Constable, a member of Costco's Southeast Regional Loss Prevention Team, review security video footage of the time clock to assess Loggins's allegations. (MSJ SOF, R. 27-2, at PageID 139 ¶ 33; Spira Decl., R. 27-6, at PageID 485 ¶ 7; Constable Decl., R. 27-8, at PageID 641 ¶ 3.) Constable's review of the security footage of the time clock from February 10 to February 22, 2023, confirmed that Mannsbart had not made contact with Loggins as Loggins had claimed. (MSJ SOF, R. 27-2, at PageID 139 ¶ 34; Constable Decl., R. 27-8, at PageID 641–43 ¶¶ 3–4, Ex. 1. [4])

---

[4] The declaration of Constable, as well as the declarations of Matthew Hopper and Andrew McKinley cited subsequently, provided the district court the security videos relevant to Costco's motion. Given that those materials are not accessible

In fact, Constable's review of security video revealed that Mannsbart and Loggins were only near each other on a single day—February 11, 2023—and, during that one day, Mannsbart did not make contact with Loggins. (MSJ SOF, R. 27-2, at PageID 139 ¶ 34; Constable Decl., R. 27-8, at PageID 641–43 ¶¶ 3–4.) Security video of the time clock from each day Loggins worked in February 2023 prior to speaking with Brim, however, similarly confirms that there was no instance in which Mannsbart made contact with Loggins while he was clocking in at the time clock. (MSJ SOF, R. 27-2, at PageID 139–40, 143–44 ¶¶ 37, 65–68; Mannsbart Decl., R. 27-4, at PageID 153–54 ¶ 11, 13–14; Pl.'s Dep., R. 27-5, at 191–99, 218, 338–39; Constable Decl., R. 27-8, at PageID 642–43 ¶ 4 & Ex. 1; Hooper Decl., R. 27-9, at PageID 645–62 ¶¶ 3–17 & Exs. 1–14; McKinley Decl., R. 27-10, at PageID 665–84 ¶¶ 4–21 & Exs. 1–14.) Loggins ultimately admits that the video of him clocking in shows what, if anything, happened between him and Mannsbart, and that the video accurately depicts what occurred. (MSJ SOF, R. 27-2, at PageID 139 ¶ 36; Pl.'s Dep., R. 27-5, at PageID 220–21.)

---

via the district court's electronic docket, they have also been sent to this Court on a hard drive for review in connection with this appeal. Costco notes that while the .ave files may be opened in typical video software, the .avi files must be opened via the Avigilon player, which is also included on the hard drive as Exhibit 15 in the Declaration of Matthew Hopper folder. As reference points, the appearances of Loggins and Mannsbart are reflected in Mannsbart's declaration filed below. (Mannsbart Decl., R. 27-4, at PageID 153–54 ¶¶ 13–14.)

At the conclusion of his review, Constable reported the results to Spira and provided him video of the only instance in which Loggins and Mannsbart had been near each other in the vicinity of the time clock. (MSJ SOF, R. 27-2, at PageID 139 ¶ 35; Constable Decl., R. 27-8, at PageID 642–43 ¶¶ 4–5 & Ex. 1.) In light of the information received from Constable, Spira believed that Loggins had been dishonest about the alleged interaction with Mannsbart. (MSJ SOF, R. 27-2, at PageID 140 ¶ 38; Spira Decl., R. 27-6, at PageID 486 ¶ 9.)

Sometime around February 17, 2023, Winfred Hamilton, Loggins's coworker, reported that Loggins told him that he had filed charges with the local police against Mannsbart for the allegedly making contact with him. (MSJ SOF, R. 27-2, at PageID 140 ¶ 39; Mannsbart Decl., R. 27-4, at PageID 154 ¶ 15.) After receiving this information, Costco's counsel emailed Loggins's counsel on February 23, 2023, asking if the report was accurate. (MSJ SOF, R. 27-2, at PageID 140 ¶ 41; Green Decl., R. 27-11, at PageID 686, 688 ¶¶ 2–3.) Loggins's counsel responded that Loggins had not filed a police report. (MSJ SOF, R. 27-2, at PageID 140 ¶ 42; Green Decl., R. 27-11, at PageID 686, 688 ¶¶ 2–3.) After Spira learned of the response of Loggins's counsel regarding the police report, he

5

concluded that Loggins had spread false and malicious gossip in the warehouse.[5] (MSJ SOF, R. 27-2, at PageID 140 ¶ 43; Spira Decl., R. 27-6, at PageID 485 ¶ 5.)

At some unidentified time in 2017, Loggins had recorded Angela Tuggle, one of his co-workers, without her consent in the bakery of the location at which they worked. (MSJ SOF, R. 27-2, at PageID 140–41 ¶ 45; Pl.'s Dep., R. 27-5, at PageID 206–07; Mannsbart Decl., R. 27-4, at PageID 154 ¶ 16.) On March 16, 2023, Loggins's counsel deposed Tuggle in connection with a separate lawsuit[6] and informed Tuggle that Loggins had recorded her. (MSJ SOF, R. 27-2, at PageID 141 ¶ 46; Pl.'s Dep., R. 27-5, at PageID 208.) After learning that Loggins had recorded her without her consent, Tuggle submitted a written complaint to Costco on or about March 17, 2023, protesting Loggins's recording of her without consent. (MSJ SOF, R. 27-2, at PageID 141 ¶ 48; Spira Decl., R. 27-6, at PageID 486, 634 ¶¶ 11–12; Davis Decl., R. 27-12, at PageID 692 ¶ 6.) In her complaint, Tuggle accused Loggins of violating Costco's Employee Agreement by recording her,

---

[5] Loggins subsequently filed a police report on March 27, 2023, claiming that he was "assaulted" and that Mannsbart had "shov[ed him] with his shoulders" on February 14, 2023, between 10:15 and 10:30 a.m. (MSJ SOF, R. 27-2, at PageID 143 ¶ 62; Pl.'s Dep., R. 27-5, at PageID 216–17; Rubanenko Decl., R. 27-13, at PageID 704–05.) Loggins admits, however, that he was not even working—or in the warehouse—on February 14, 2023, and that no encounter happened that day. (MSJ SOF, R. 27-2, at PageID 143–44 ¶ 65; Pl.'s Dep., R. 27-5, at PageID 191-99, 218.) Following his termination, Loggins again claimed that he had been "intentionally shoved." (MSJ SOF, R. 27-2, at PageID 143 ¶ 60; Rubanenko Decl., R. 27-13, at 696, 699 ¶ 5.)

[6] This is Loggins's third lawsuit against Costco. *See* Case No. 2:22-cv-02026 (W.D. Tenn.); Case No. 2:17-cv-2688 (W.D. Tenn.).

reported that she found his conduct upsetting, and asked that Costco terminate Loggins's employment. (MSJ SOF, R. 27-2 at PageID 141 ¶ 48; Spira Decl., R. 27-6, at PageID 486, 634 ¶¶ 11–12; Davis Decl., R. 27-12, at PageID 692 ¶ 6.) Spira and Wendy Davis, a Senior Vice President, subsequently became aware of Tuggle's complaint. (MSJ SOF, R. 27-2 at PageID 141 ¶ 48; Spira Decl., R. 27-6, at PageID 486 ¶ 11; Davis Decl., R. 27-12, at PageID 692 ¶ 6.) Neither Spira nor Davis—nor Yoram Rubanenko, an Executive Vice President and Chief Operations Officer—became aware that Tuggle had been recorded without her consent until at least February 2023, if not later. (MSJ SOF, R. 27-2, at PageID 141 ¶ 49; Mannsbart Decl., R. 27-4, at PageID 154 ¶ 16; Pl.'s Dep., R. 27-5, at PageID 211–12; Spira Decl., R. 27-6, at PageID 486 ¶ 11; Davis Decl., R. 27-12, at PageID 692 ¶ 6; Rubanenko Decl., R. 27-13, at PageID 695–96 ¶ 3.)

Upon consideration of Loggins's conduct and the information that had been obtained, Spira and Davis concluded that Loggins had (1) recorded a co-worker without her consent; (2) been dishonest and had spread malicious gossip in falsely claiming that Stefan Mannsbart assaulted him at the time clock when clocking-in; and (3) been dishonest and spread malicious gossip in claiming to at least one co-worker that he had filed a police report when, at the time, he had not. (MSJ SOF, R. 27-2, at PageID 141 ¶ 50; Spira Decl., R. 27-6, at PageID 486–87 ¶ 13; Davis Decl., R. 27-12, at PageID 692 ¶ 7.) Each of those acts were violations of—and are

7

identified as independent grounds for potential termination in—Costco's Employee Agreement, which outlines Costco's disciplinary policies. (MSJ SOF, R. 27-2, at PageID 135–36, 141–42 ¶¶ 5–6, 51; Pl.'s Dep., R. 27-5, at PageID 199–200, 416–19; Spira Decl., R. 27-6, at PageID 484 ¶¶ 3, 13; Spira Decl. R. 27-6, at PageID 565–68; Davis Decl., R. 27-12, at PageID 692 ¶ 7.)

Loggins was suspended on March 25, 2023, for the aforementioned conduct. (MSJ SOF, R. 27-2, at PageID 142 ¶ 52; Spira Decl., R. 27-6, at PageID 486–87, 636 ¶¶ 13–14; Davis Decl., R. 27-12, at PageID 692 ¶¶ 7–8.) Spira and Davis ultimately determined that, due to that conduct, Loggins would be terminated. (MSJ SOF, R. 27-2, at PageID 142 ¶ 53; Spira Decl., R. 27-6, at PageID 487 ¶ 15; Davis Decl., R. 27-12, at PageID 693 ¶ 9.) He was ultimately terminated on March 28, 2023, after Rubanenko reviewed the determination and confirmed his agreement with it. (MSJ SOF, R. 27-2, at PageID 142 ¶¶ 53–54; Pl.'s Dep., R. 27-5, at PageID 222–23; Rubanenko Decl., R. 27-13, at PageID 695–96 ¶¶ 3–4.) Mannsbart did not make any recommendation or decision in Loggins's termination. (Mannsbart Decl., R. 27-4, at PageID 154–55 ¶ 17.)

Loggins does not dispute that Spira, Davis, and Rubanenko genuinely believed that he had recorded Tuggle without her permission, had falsely claimed Mannsbart had made contact with him at the time clock, and had falsely claimed to a co-worker that he had filed a police report against Mannsbart. (MSJ SOF, R. 27-

2, at PageID 142 ¶ 55; Pl.'s Dep., R. 27-5, at PageID 226–28.) In fact, Loggins conceded the following regarding his termination during his deposition:

> **I got terminated for those three items that you recall saying, the tape recorder that you recorded Angela without her permission back in 2017, and the dishonest, and the malicious gossip. And I agree with you that I did that. I'm not disputing that. I'm saying to you 100% that that's what I did.**

(MSJ SOF, R. 27-2, at PageID 142 ¶ 56 (emphasis added); Pl.'s Dep., R. 27-5, at PageID 232.) Loggins further admits that discrepancies in his accounts may have raised "red flags" about whether he was telling the truth. (MSJ SOF, R. 27-2, at PageID 144–45 ¶ 71; Pl.'s Dep., R. 27-5, at PageID 234.)

Separate and apart from the above, Loggins attempts to compare himself to two coworkers: Luterio Ramirez and Jacqueline Davis. Loggins admits, however, that he has no knowledge of Ramirez or Jacqueline Davis falsely claiming that they had been assaulted by the General Manager, falsely claiming they had filed a police report about a co-worker, or recording a co-worker without permission. (MSJ SOF, R. 27-2, at PageID 142–43 ¶¶ 57–58; Pl.'s Dep., R. 27-5, at PageID 228–31.) Instead, it is undisputed that Ramirez was issued a counseling notice and moved to a different department for threatening Loggins. (MSJ SOF, R. 27-2, at PageID 142–43 ¶ 57; Mannsbart Decl., R. 27-4, at PageID 155, 167 ¶ 18) Davis, for her part, had been issued a counseling notice and demoted for inaccurately logging the time of an employee's sick call and walking out of a meeting before it

9

had been resolved. (MSJ SOF, R. 27-2, at PageID 143 ¶ 58; Mannsbart Decl., R. 27-4, at PageID 155, 169, ¶ 19.) Regardless, Justin Spira (VP, Regional Operations Manager), Wendy Davis (Senior Vice President), and, Yoram Rubanenko (Executive Vice President & Chief Operations Officer)—the individuals who decided and approved Loggins's termination—were not even in their roles until *after* Ramirez and Jacqueline Davis had been disciplined for their different conduct. (MSJ SOF, R. 27-2, at PageID 143 ¶ 59; Spira Decl., R. 27-6, at PageID 484 ¶ 2; Davis Decl., R. 27-12, at PageID 691 ¶ 2; Rubanenko Decl., R. 27-13, at PageID 695 ¶ 2.)

## SUMMARY OF THE ARGUMENT

Appellant Dennis Loggins was terminated because Costco believed that he had engaged three separate, serious incidents of misconduct: (1) his dishonesty and malicious gossip in claiming that his General Manager, Stefan Mannsbart, shoved him at the time clock (when security video definitively established otherwise); (2) his dishonesty and malicious gossip in falsely stating to a coworker that he had filed a police report against Mannsbart for the alleged shove (when no such report had been filed and no such shove had occurred); and (3) his recording of a coworker (when she had not consented to the same). Each of these activities was an independently sufficient ground for Loggins's termination under Costco's Employee Agreement.

10

Given these facts and the undisputed record below, the district court properly entered summary judgment in favor of Costco on the only claim placed at issue in this appeal—his claim that he was retaliated against for producing the recording of his coworker in discovery. The district court correctly determined that Loggins had not carry his burden of establishing but-for causation, as part of his prima facie (and ultimate) showing for his retaliation claim—a ruling that Loggins did not challenge in his appellate brief. The district court further correctly determined that Loggins had failed to present evidence that created a genuine issue of fact as to whether *each* of the reasons given for his termination was a mere pretext for retaliation. The district court's summary judgment ruling should be affirmed.

## <u>ARGUMENT</u>

### I.    STANDARD OF REVIEW

In general, a district court's grant of summary judgment is subject to *de novo* review. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006). Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party may do this by pointing to an "an absence of evidence to support the non-moving party's case," after which the non-moving party must come forward

with specific facts that demonstrate the existence of a genuine issue for trial *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

An issue is not genuine if it is unsupported by evidence or involves evidence that is "merely colorable" or is not "significantly probative." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-250 (1986). A court also should not credit allegations that are "implausible." *Galey v. May Dep't Stores Co.*, 9 F. App'x 295, 297-98 (6th Cir. 2001). Indeed, when a plaintiff's account is "blatantly contradicted" by video evidence, that account is entitled to no weight at the summary judgment stage, and the court instead must "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

## II.    LOGGINS ABANDONED ALL CLAIMS OTHER THAN HIS RETALIATORY TERMINATION CLAIM RELATED TO THE RECORDING OF TUGGLE.

In the district court, Loggins asserted claims of (1) discrimination and retaliation under Title VII and Section 1981 for his receipt of a counseling notice and a three-day suspension; and (2) discrimination under Section 1981 for an alleged failure to receive cross-training as a forklift driver. (Compl., R. 1, at PageID 7–11.) On appeal, however, Loggins does not raise any arguments concerning those claims. He therefore has waived any challenge to the district court's grant of summary judgment as to them. *See, e.g.*, *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 881 (6th Cir. 1996) (holding that, when an appellant

12

"raise[d] only the dismissal of her ADA claims" in her brief on appeal, she "waived all other arguments" as to other claims).

Instead, the only claim placed at issue in Loggins's appellate brief is his claim that he was allegedly retaliated against for producing a recording of Angela Tuggle in discovery. (*See generally* R.27-2, at PageID 140 ¶ 44 (noting Loggins's admission that his retaliation claim is based solely on him "producing [the recording of Angela Tuggle] in discovery"); Pl.'s Dep., R. 27-5, at PageID 225.) That claim is discussed in the following section.

## III.   THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON LOGGINS'S RETALIATION CLAIM.

With respect to the termination-based retaliation claims that Loggins does place at issue in his appeal, the district court's summary judgment order should be affirmed on two grounds. First, Loggins did not challenge the district court's determination that he had not presented sufficient evidence to establish but-for causation, which was an independent ground for the district court's entry of summary judgment. Second, the district court correctly determined that the record did not create any genuine issue of material fact as to whether all of Costco's three bases for his termination were mere pretexts for retaliation. These issues are discussed, in turn, below.

13

### A. Loggins Did Not Challenge the District Court's Determination that He Had Not Carried His Burden of Establishing But-For Causation.

As a threshold matter, the Court should affirm the grant of summary judgment to Costco because Loggins failed to challenge one of the grounds cited by the district court for the entry of summary judgment—namely, that he "ha[d] not established but-for causation." (MSJ Order, R. 42, at PageID 884.) Specifically, the district court held that (1) it was undisputed that Loggins had been terminated for three separate reasons (recording a coworker without consent, dishonesty, and malicious gossip), each of which was independently sufficient for termination under the employee agreement; and (2) Loggins had not presented any evidence that, even without considering the recording of the coworker, "he would not have been punished as he was." (*Id.*)

Loggins does not challenge the district court's holding on this point in his appellate brief. His "Statement of Issues" addresses only the second ground upon which the district court granted summary judgment—whether the district court erred in its *pretext* analysis. To be sure, Loggins's brief does, at one point, outline the typical prima facie elements of a retaliation claim under the *McDonnell Douglas* analytical framework. (Appellant's Opening Brief ("AOB") at 15–20.) In discussing the various elements, he does assert that he could establish causation by virtue of temporal proximity. (*Id.* at 20.)

14

But Loggins's argument that his engagement in alleged protected activity was *a cause* of his termination is not the same as establishing that such protected activity was *a but-for cause* of his termination. *Cf. Goodsite v. Norfolk S. Ry. Co.*, 573 F. App'x 572, 585–86 (6th Cir. 2014) (noting the distinction between the lower standard of a "retaliatory motive [being] *a* motivating factor" and the higher standard of "retaliatory animus being the *but-for* cause of [the] termination"). In fact, Loggins's brief does not include even a single reference to but-for causation, let alone address the district court's conclusion that he failed to show that he would not have been similarly terminated had he not engaged in protected activity, based on his other undisputed recent policy violations. (MSJ Order, R. 42, at PageID 884; *see also Benge v. Johnson*, 474 F.3d 236, 245 (6th Cir. 2007) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citation omitted)).

Thus, Loggins failed to properly place this ruling—which was an independent basis for the district court's entry of summary judgment—at issue in this appeal, and the Court need not reach Loggins's separate challenges to the district court's pretext ruling. *See, e.g.*, *Breier v. ITT Automotive, Inc.*, 98 F. App'x 458, 460 (6th Cir. 2004) (holding that, even if the district court made an error in one ruling, "the result would be the same" because the court also granted summary judgment on an independent ground, which was "not challenged on appeal"). In

15

any event, the district court's ruling was correct for the reasons it noted. Loggins simply did not present record evidence to the trial court indicating that retaliation was a but-for cause of his termination.

### B. Loggins Failed to Create a Genuine Issue of Material Fact as to Pretext for His Retaliation Claim.

Separate and apart from the foregoing, Loggins's brief raises two issues on appeal, both related to the district court's pretext analysis for his retaliation claim. *First*, Loggins argues that the district court erred in concluding that he had failed to present a genuine issue of material fact as to pretext for two of the three bases for his termination: dishonesty and malicious gossip. *Second*, he argues that the district court erred in "holding" that he could not establish pretext with respect to his recording of a coworker without her consent.[7] Neither argument has merit.

#### 1. *Loggins Failed to Establish that Terminating Him for Malicious Gossip or Dishonesty Was a Mere Pretext for Retaliation.*

Under the *McDonnell-Douglas* framework—which Loggins concedes applies to his claims (AOB at 16)—after an employee establishes a prima facie case of retaliation, the defendant may rebut any inference of discrimination by presenting a legitimate, nonretaliatory reason for the alleged adverse employment action. *Dixon v. Gonzales*, 481 F.3d, 324, 333 (6th Cir. 2007). If the employer

---

[7] Contrary to Loggins's characterization, the district court did not actually reach this issue because it did not have to do so after Loggins did not present evidence of pretext for the other two reasons. (MSJ Order, R. 42, at PageID 885.)

meets its burden of production, the employee must show that "the proffered reasons was not the true reason for the employment decision." *Id.*

When an employer offers more than one reason for its action, "even if one is found to be pretextual but at least one other is not, the defendant employer is still entitled to summary judgment." *Jones v. St. Jude Med. S.C., Inc.*, 504 F. App'x 473, 477–78 (6th Cir. 2012); *accord Burks v. Yellow Transp. Inc.*, 58 F. App'x 867, 876 (6th Cir. 2008) (affirming summary judgment where the plaintiff only established that one of the three reason for a termination was pretextual). And to establish pretext as to each reason proffered for the termination, the employee must show one of the following: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [his] discharge, or (3) that they were insufficient to motivate discharge." *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008) (citation omitted).

Here, the district court held that, even without reaching the fact that Loggins recorded a coworker without her consent, "Costco has two other legitimate reasons (dishonesty and spreading malicious gossip), and Plaintiff admitted to their validity and has provided no evidence to show that they are pretextual." (MSJ Order, R. 42, at PageID 885.) Loggins does not dispute the correctness of the district court's conclusion that he was required to show that each of Costco's reasons for the

17

termination were pretextual. Instead, he argues that he *did* demonstrate pretext as to each reason. He did not as a matter of law.

        a.      <u>Loggins's Dishonesty and Malicious Gossip About Mannsbart Making Contact with Him.</u>

One reason proffered by Costco for Loggins's termination was its determination that he had been dishonest and spread malicious gossip when he falsely claimed that Mannsbart made contact with him at the time clock in February 2023 while he was clocking in. While Loggins raises several arguments as to why that reason is pretextual, each fails.

*First*, Loggins attempts to argue that he was not, in fact, dishonest about the incident, pointing to his own account and the declaration of a third-party, Elvie Maclin. (AOB at 22–23.) But the district court held—and Loggins simply ignores without any explanation—that, under Supreme Court and Sixth Circuit precedent, the district court could not consider testimony at the summary judgment stage "blatantly contradicted" by security video concerning the matter. *Scott,* 550 U.S. at 380–81; *accord Shreve v. Franklin County*, 743 F.3d 126, 132 (6th Cir. 2014) ("[W]itness accounts seeking to contradict an unambiguous video recording do not create a triable issue."). Here, it is undisputed that the security video of the time clock shows that Mannsbart did not make contact with Loggins at or near the time clock while Loggins was clocking in at any point in February 2023. (MSJ SOF, R. 27-2, at PageID 139–40, 143–44, ¶¶ 35–37, 62–68; Mannsbart Decl., R. 27-4, at

PageID 153–54 ¶ 11, 13–14; Pl.'s Dep., R. 27-5, at PageID 191–99, 218, 338; Constable Decl., R. 27-8, at PageID 642 ¶ 4 & Ex. 1; Hooper Decl., R. 27-9, at PageID 645–62 ¶¶ 3–17 & Exs. 1–14; McKinley Decl., R. 27-10, at PageID 665–84 ¶¶ 4–21 & Exs. 1–14.)

Although Loggins now argues—without evidence—that "the video did not capture the encounter" (AOB at 10), that argument was not raised below and thus cannot be raised now. *United States v. Premises Known as 526 Liscum Drive*, 866 F.2d 213, 217 (6th Cir. 1989) ("This court will not consider on appeal . . . issues not presented to the trial court."). In any event, the argument contradicts his own deposition testimony, in which he acknowledged that security video of him clocking in *did* show what occurred between the two individuals. (MSJ SOF, R. 27-2, at PageID 139 ¶ 36; Pl.'s Dep., R. 27-5, at PageID 220–21.)

*Second*, even if he had presented competent evidence, his argument ignores the relevant inquiry at the pretext stage. "'As long as an employer has an honest belief in its proffered nondiscriminatory reason,' the employee cannot establish pretext simply because the reason is ultimately shown to be incorrect." *Jones*, 504 F. App'x at 477 (quoting *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001)). "When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish,

19

trivial, or baseless.'" *Chen v. Dow Chemical Co.*, 580 F.3d 394, 401 (6th Cir. 2009) (citation omitted).

And here, the undisputed record below establishes that the individuals who decided and approved Loggins's termination—Spira, Davis, and Rubanenko—genuinely believed that Loggins engaged in each of the three acts that formed the bases for his termination. (MSJ SOF, R. 27-2, PageID 141–42 ¶¶ 50–51, 53–54; Spira Decl., R. 27-6, at PageID 486–87 ¶ 13; Davis Decl., R. 27-12, at PageID 692 ¶ 7; Pl.'s Dep., R. 27-5, at PageID 226–28; Rubanenko Decl., R. 27-13, at PageID 695–96 ¶¶ 3–4.) With respect to the allegation of Mannsbart making contact with Loggins, in particular, it is undisputed that the conclusion followed a review of security footage. (MSJ SOF, R. 27-2, at PageID 139 ¶¶ 33–35; Constable Decl., R. 27-8, at PageID 641–42 ¶¶ 3–4 & Ex. 1.)

In fact, Loggins has no basis to challenge the genuineness of that belief, given the following sworn concession at his deposition:

> I got terminated for those three items that you recall saying, the tape recorder that you recorded Angela without her permission back in 2017, and the dishonest, and the malicious gossip. And I agree with you that I did that. I'm not disputing that. I'm saying to you 100 percent that's what I did.

(MSJ SOF, R. 27-2, at PageID 142 ¶ 56; Pl.'s Dep., R. 27-5, at PageID 232.) Loggins further admits he may have made inaccurate statements to HR about the alleged incident and that there may have been "red flags" about his honesty. (MSJ

20

SOF, R. 27-2, PageID 139, 144–45 ¶¶ 31, 71; Pl.'s Dep., R. 27-5, at PageID 233–34.)Because Loggins did not rebut that the decisionmakers genuinely believed that Loggins had been dishonest and spread malicious gossip about Mannsbart making contact with him at the time clock (or had engaged in the other conduct for which he was terminated), he did not establish pretext as a matter of law.

*Third*, Loggins claims that Mannsbart said to him in *October 2022* that "you are not going to have a job much longer if you keep throwing out allegations that are not going to stick." (AOB at 12.) The undisputed record, however, establishes that Mannsbart—who was not a decisionmaker in Loggins's termination—was not even aware of the recording that Loggins claims underlies his alleged protected activity at until *February 2023*. (MSJ SOF, R. 27-2, at PageID 141 ¶ 49; Mannsbart Decl., R. 27-4, at PageID 154 ¶¶ 15–16.) Any comment made months prior by a nondecisionmaker is not evidence of retaliation for a yet-unknown protected activity.[8] *See, e.g.*, *Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir.

---

[8] Loggins claims that Mannsbart was the "driving force behind" the termination (AOB at 24), but he cites no evidence for that assertion. Instead, the evidence is undisputed that (1) Mannsbart did not make any recommendation or decision for the suspension or termination; (2) Spira conducted an independent investigation; and (3) Spira and Davis made the relevant decisions. (MSJ SOF, R. 27-2, at PageID 141–42 ¶¶ 50–53; Spira Decl., R. 27-6, at PageID 486–87, 636 ¶¶ 13–15; Davis Decl., R. 27-12, at PageID 692–93 ¶¶ 7–9; Rubanenko Decl., R. 27-13, at PageID 695–96 ¶¶ 3–4.) Under these circumstances, a cat's paw theory does not apply. *See, e.g., Roberts v. Principi*, 283 F. App'x 325, 333 (6th Cir. 2008) ("[W]hen a decisionmaker makes a decision based on an independent

21

2009) ("Statements by non-decisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . .") (citation omitted).

*Finally*, Loggins points to the discipline of Jacqueline Davis and Luterio Ramirez as supposed pretext evidence. The undisputed record, however, precludes Loggins's argument because Loggins was not "similar" to those individuals "in all of the relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). Those aspects include, among other things, whether "the individuals . . .have dealt with the same supervisor" and "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). The decisionmakers in Loggins's termination, however, were not even in their roles at the time of the incidents involving Ramirez and Davis, rendering those individuals inappropriate comparators. (MSJ SOF, R. 27-2, at PageID 143 ¶ 59; Spira Decl., R. 27-6, at PageID 484 ¶ 2; Davis Decl., R. 27-12, at PageID 691 ¶ 2; Rubanenko Decl., R. 27-13, at PageID 695 ¶ 2; *see also Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000) (holding that individuals were not similarly situated when the

---

investigation, any causal link between the subordinate's retaliatory animosity and the adverse action is severed.").

individual "who made the decision to fire [plaintiff] did not determine [the proposed comparators'] discipline").

Further, the undisputed record establishes neither individual engaged in the same conduct as Loggins.[9] (MSJ SOF, R. 27-2, at PageID 142–43 ¶¶ 57–58; Pl.'s Dep., R. 27-5, at PageID 228–31.) Loggins does not allege that Ramirez engaged in dishonesty or malicious gossip at all; rather Loggins only points to Ramirez making a threat to Loggins, for which Ramirez was counseled and moved to a different department. (MSJ SOF, R. 27-2, at PageID 142–43 ¶ 57; Mannsbart Decl., R. 27-4, at PageID 155, 167 ¶ 18.) And with respect to Davis, the undisputed evidence is that she was counseled and demoted for entirely different conduct: inaccurately logging the time of an employee's sick call and walking out of a meeting before it had been resolved. (MSJ SOF, R. 27-2, at PageID 143 ¶ 58; Mannsbart Decl., R. 27-4, at PageID 155, 169, ¶ 19.) As the district court observed, falsifying a sick call or reporting it inaccurately is "qualitatively different" than lying or gossiping about being assaulted by a co-worker. (MSJ Order, R. 42, at PageID 877–78.) And those indisputable differences render Ramirez and

---

[9] Although the instant discussion concerns the issue of dishonesty and malicious gossip with respect to the claim of Mannsbart making contact with him, Loggins also did not establish a comparator for the other bases for his termination for similar reasons. *see also, e.g.*, *Ruth v. Children's Med. Ctr.*, No. 90-4069, 1991 WL 151158, at *7 (6th Cir. Aug. 8, 1991) (noting the dissimilarity when performance issues of the plaintiff "were chronic and willful," while an alleged comparator had only a single issue).

23

Jacqueline Davis irrelevant. *Mitchell*, 964 F.2d at 583; *see also, e.g.*, *Ruth* 1991 WL 151158, at *7 (noting insufficient similarity where plaintiff and a comparator "committed medication errors," but those errors "differed in both type and severity").

For the above reasons—and as correctly decided by the district court—Loggins failed to establish that his termination for dishonesty and malicious gossip concerning the alleged contact by Mannsbart was a pretext for retaliation, and summary judgment was proper.

> b.     <u>Loggins's Malicious Gossip About a Police Report and Mannsbart.</u>

The second reason that Costco terminated Loggins was its belief that he engaged in malicious and false gossip when he claimed to at least one co-worker that he had filed a police report against his General Manager, Stefan Mannsbart for allegedly making contact with him, but in reality, he had not filed any such report at the time. (MSJ SOF, R. 27-2, at PageID 141–42 ¶¶ 50–55; Spira Decl., R. 27-6, at PageID 487 ¶ 15; Davis Decl., R. 27-12, at PageID 693 ¶ 9; Rubanenko Decl., R. 27-13, at PageID 695–96 ¶¶ 3–4.)

Loggins's pretext arguments on the malicious gossip issue appear to, at least in some respects, overlap with his discussion of dishonesty above. To the extent those pretext arguments are intended to apply to the police-report discussion, they fail for the same reasons outlined previously. But Loggins does appear to raise

several additional pretext-related arguments bearing on the police-report issue, which again are insufficient to establish pretext.

*First*, Loggins argues that, *after* Costco had already been informed that Loggins had told a co-worker that he had filed a police report (MSJ SOF, R. 27-2, at PageID 140 ¶¶ 39, 41–42; Mannsbart Decl., R. 27-4, at PageID 154 ¶ 15; Green, Decl., R. 27-11, at PageID 686, 688 ¶ 3), his counsel "advised [Costco's counsel] that the Appellant had not filed the police report" and that Costco thus "knew Appellant had not filed a police report" (AOB at 22). But Loggins's argument not only fails to rebut Costco's reason, it proves it. Indeed, in its summary judgment motion, Costco explicitly noted that the admission of Loggins's counsel was *confirmation* that Loggins had spread false and malicious gossip in the workplace concerning Mannsbart. (MSJ SOF, R. 27-2, at PageID 140 ¶¶ 41–43; Green Decl., R. 27-11, at PageID 686, 688, ¶3; Spira Decl., R. 27-6, at PageID 485 ¶ 5.) Thus, Loggins's argument simply does not establish pretext.

*Second*, Loggins argues that "[t]here was no massive widespread malicious gossip." (AOB at 22.) He did not raise this argument below, and it is now waived. *See, e.g.*, *Liscum Drive*, 866 F.2d at 217. But it is also a distinction without difference because Costco never suggested there was "massive widespread" malicious gossip. Instead, it pointed to a single known instance of Loggins spreading malicious gossip to his co-worker, Winfred Hamilton, relating to the

police-report issue. (MSJ SOF, R. 27-2, at PageID 140 ¶ 39; Mannsbart Decl., R. 27-4, at PageID 154 ¶ 15.) Thus, this contention is also irrelevant to the pretext inquiry.

*Finally*, Loggins argues that it is evidence of pretext that Costco "knew about the fact that the Appellant did not file the police report in 2023, but it took no adverse action until March 2023." (AOB at 28.) Loggins did not raise that argument in the district court, and so he waived it. *Liscum Drive*, 866 F.2d at 217. In any event, despite that Loggins bears the burden of establishing pretext, he points to no evidence of when each of the relevant individuals involved in deciding (Spira and Davis) and approving (Rubanenko) the termination learned of the malicious gossip. He also points to no evidence indicating that the time taken to review the matter by those individuals was in any way suspicious, or that any prior determination had been made *not* to discipline for his conduct. *See, e.g.*, *Jones*, 504 F. App'x at 479 (finding no pretext when a defendant knew of recordings in May, but did not complete its review, involving multiple individuals, until December). Loggins's argument, even if it were not waived, is therefore devoid of any evidentiary predicate.

In short, Loggins did not show that he was not terminated for his malicious and false gossip related to a police report,[10] and the district court's order should separately be affirmed on that basis.

> 2. *Loggins Failed to Establish that Terminating Him for Recording a Co-Worker Without Consent Was a Mere Pretext for Retaliation.*

Because Loggins cannot show that both of the aforementioned reasons for his termination were pretextual, the court need not address the third ground for his termination: his recording of Angela Tuggle without her consent. *Jones*, 504 F. App'x at 477–78 ("[E]ven if one is found to be pretextual but at least one other is not, the defendant employer is still entitled to summary judgment.") (citation omitted). In fact, contrary to Loggins's assertion in his Statement of Issues that the district court made an affirmative determination as to pretext on this third ground for his termination (AOB at 8), it did no such thing. Instead, the district court noted that it did not need to reach the issue due to Loggins's failure to demonstrate pretext as to the other bases for his termination (MSJ Order, R. 42, at PageID 885.) Even so, the undisputed record makes clear that Loggins also did not establish

---

[10] As noted above, Loggins has also not presented any evidence undermining the genuineness of the decisionmakers' belief that he engaged in malicious gossip. Nor are Rodriguez or Jacqueline Davis comparators as to this issue, given that there is no evidence of either engaging in similar conduct. (MSJ SOF, R. 27-2, at PageID 142–43 ¶¶ 57–58; Pl.'s Dep., R. 27-5, at PageID 228–31; Mannsbart Decl., R. 27-4, at PageID 155, 167, 169 ¶¶ 18–19.)

pretext with respect to the third ground for his termination, which is an independent basis on which to affirm summary judgment for Costco.

Loggins's argument on appeal is that his recording of Tuggle, without her consent, cannot be a legitimate reason for his termination, because he subsequently produced the recording in connection with a different discrimination case. That, however, is not the law.

To be clear, Loggins was not terminated because he *produced* the recording in a lawsuit. He was terminated because he *recorded* his coworker without her consent in violation of the explicit prohibition on such conduct in Costco's Employee Agreement. (MSJ SOF, R. 27-2, at PageID 141–42 ¶¶ 50–53; Spira Decl., R. 27-6, at PageID 487 ¶ 15; Davis Decl., R. 27-12, at PageID 693 ¶ 9.) And Loggins did not present evidence record below—nor does he point to any now— that would permit a conclusion that the act of recording itself occurred under circumstances that would qualify it as a protected activity, despite that he bore the burden on that issue.[11] *See, e.g.*, *Jones*, 504 F. App'x at 473 (holding that the act of making recordings of coworkers without their consent "for a possible lawsuit" was

---

[11] To be covered by the participation clause, conduct must be participation "in any manner" in an "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). Among other things, Loggins did not present evidence that any "investigation, proceeding, or hearing" was underway at the time of the recording of Tuggle. *See Booker*, 879 F.2d at 1313 (holding that, with respect to "any activity by the employee prior to the instigation of statutory proceedings," he "cannot seek protection under the participation clause").

28

not a protected activity covered by the participation clause, despite that the defendant subsequently "received th[o]se recordings through the discovery process"); *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989) ("[S]ince there is no evidence that proceedings were instigated prior to [the plaintiff's] letter, he cannot seek protection under the participation clause.").

For Loggins, therein lies the rub. He engaged in conduct—recording a coworker without her consent—that Costco's established policies identified as a grounds for potential termination. (MSJ SOF, R. 27-2, at PageID 136, 140–41 ¶¶ 8, 45; Pl.'s Dep., R. 27-5, at PageID 199–200, 416–19; Spira Decl., R. 27-6, at PageID 484, 486–87 ¶¶ 3, 13; Spira Decl., R. 27-6, at PageID 565–68; Davis Decl., R. 27-12, at PageID 692 ¶ 7.) That conduct presented a legitimate, nonretaliatory reason for her termination, regardless of whether those recordings became a subject of discovery in later litigation. *See Jones*, 504 F. App'x at 477 (affirming the legitimacy of plaintiff being terminated for "her recording of conversations in violation of . . . company policy," when those recordings were produced in a later lawsuit). And Loggins has failed to establish that his termination for an *unauthorized recording* was a mere pretext for retaliation.

Thus, while the other two reasons for Loggins's termination each independently sufficient to require the entry of summary judgment on Loggins's

29

retaliatory termination claim, Costco's third reason offers an independent ground to affirm the district court's ruling.

## **CONCLUSION**

In light of the foregoing, the Court should affirm the district court's order granting Costco summary judgment.

Respectfully submitted this 4th day of March 2026,

COSTCO WHOLESALE CORPORATION

By: /s/ *Andrew McKinley*
Andrew McKinley
amckinley@seyfarth.com
Dawn Solowey
dsolowey@seyfarth.com
Bailey G. Green
bgreen@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309-3958
Telephone:    (404) 885-1500
Facsimile:    (404) 885-7056

*Counsel for Defendant-Appellee*
*Costco Wholesale Corporation*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned certifies that the foregoing document was prepared using 14-point Times New Roman type and contains 7612 words, exclusive of the parts of the document covered by Fed. R. App. P. 32 (f), and that it is within the Court's page limitations.

*/s/ Andrew M. McKinley*
Andrew M. McKinley

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2026, a copy of the foregoing Appellee's Appendix was filed electronically with the Clerk of the Court using the CM/ECF system which will send email notification of such filing to all counsel of record. Parties may access this filing through the Court's electronic filing system.

*/s/ Andrew M. McKinley*
Andrew M. McKinley

**DESIGNATION OF RELEVANT DOCUMENTS**

Pursuant to 6th Cir. R. 30(g)(1), Defendant-Appellee Costco Wholesale Corporation hereby designates the following filings in the district court's electronic records to be relevant for the purposes of this appeal:

| R. # | Document Description | PageID # |
|------|---------------------|----------|
| 1 | Complaint | 1-12 |
| 8 | Order to Consolidate Cases | 26-28 |
| 9 | Defendant's Answer to Plaintiff's Complaint | 29-49 |
| 24 | Defendant's Amended Answer to Plaintiff's Complaint | 88-109 |
| 27 | Defendant's Motion for Summary Judgment | 113-115 |
| 27-1 | Defendant's Memorandum of Law in Support of its Motion for Summary Judgment | 116-134 |
| 27-2 | Defendant's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment | 135-146 |
| 27-3 | Defendant's Index of Evidentiary Materials in Support of its Motion for Summary Judgment | 147-149 |
| 27-4 | Exhibit A – Declaration of Stefan Mannsbart | 150-170 |
| 27-5 | Exhibit B – Deposition Excerpts of Dennis Loggins* | 171-482 |

33

| 27-6 | Exhibit C – Declaration of Justin Spira | 483-636 |
|---|---|---|
| 27-7 | Exhibit D - Declaration of Danetta Brimm | 637-639 |
| 27-8 | Exhibit E – Declaration of Sean Constable* | 640-643 |
| 27-9 | Exhibit F – Declaration of Matthew Hooper* | 644-663 |
| 27-10 | Exhibit G – Declaration of Andrew McKinley* | 664-684 |
| 27-11 | Exhibit H – Declaration of Bailey Green | 685-689 |
| 27-12 | Exhibit I – Declaration of Wendy Davis | 690-693 |
| 27-13 | Exhibit J – Declaration of Yoram Rubanenko | 694-705 |
| 27-14 | Exhibit K – Excerpts from Plaintiff's Responses to Defendant's Amended First Set of Interrogatories | 706-71 |
| 30 | Response to Defendant's Motion for Summary Judgment | 716-718 |
| 30-1 | Affidavit of Elve Maclin | 719-721 |
| 30-2 | Deposition Excerpts of Dennis Loggins | 722-771 |
| 30-3 | Email from Danetta Brim | 772 |
| 30-4 | Deposition Excerpts of Jason Edward Newman | 773-783 |
| 30-5 | Memorandum Brief in Opposition to Defendant's Motion for Summary Judgment | 784-794 |
| 31 | Plaintiff's Responses to Defendant's Statement of Undisputed Material Facts in Support of its Motion for Summary | 795-810 |

34

| | Judgment | |
|---|---|---|
| 32 | Plaintiff's Statement of Disputed Facts | 811-814 |
| 33 | Defendant's Reply in Support of its Motion for Summary Judgment | 815-823 |
| 34 | Costco's Response to Plaintiff's Statement of Disputed Facts | 824-835 |
| 42 | Order Granting Costco's Motion for Summary Judgment | 864-886 |
| 43 | Judgment | 887 |
| 44 | Notice of Appeal | 903-905 |

*These declarations at R. 27-5, 27-8, 27-9 and 27-10 include video and/or audio files that do not have Page ID numbers and were provided to the District Court and the Sixth Circuit on hard drives via FedEx.

35